Curia, per Johnston, Ch.
We perceive no sufficient ground to distrust the chancellor’s judgment, touching the infancy of Elizabeth Messervey, and, therefore, his decree upon that point is affirmed.
We also concur in his conclusion, that the premises are liable in the hands of Gatewood to the plaintiff’s demand. But we do not put the decree on this point upon any such ground as was intimated in argument. The remedy is not administered under the idea that the statutory mortgage or lien which attached upon the property when purchased by Mrs. Messervey, attended it into the hands of Phillip J. Messervey. The sale at which he purchased was made under that lien ; and divested the lien as in case of a sale under an ordinary mortgage.
Nor do we wish to be understood as putting the decree upon the ground indicated by the chancellor; that the purchase was void for mere non-compliance with the terms of the sale. It is *176 not deemed necessary to determine that point; because there are stronger and better grounds for sustaining the decree.
We sustain the decision upon the ground substantiated by Gatewood’s answer, that the title was obtained from the commissioner for his benefit and with his privity by one whom he knew to be incapable of paying the purchase money; having tested that fact in his incapacity to satisfy the demands which he, himself, held on him. While we take pleasure in stating that there is no reason to suppose that this defendant had the slightest suspicion that the authority under which Phillip undertook to receipt for the shares of his sisters was not genuine, we cannot shut our eyes to the plain fact that the eifort was to obtain satisfaction oí his demands by a merely formal proceeding; in which the property of others was to be applied to his debt, while they receive nothing and were expected to receive nothing for it. .So far as the knowledge of the agent to whom he confided the investigation of the title was concerned, he had notice of the anterior proceedings before he took his first mortgage; and he, himself, admits that before he took his title, he had such notice of the plaintiff’s claim as should have put him on his guard.
In deciding this case upon the bona or mala Jides of the transaction we attach much importance to the fact that the mortgages and conveyance were not taken by Gatewood for money advanced upon the faith of them ; but as a security or satisfaction for an antecedent debt or liability. The case is substantially analogous to that of a person dealing with an executor for the assets of his testator’s estate. In McLeod vs. Drummond, (14 Ves. 362) referred to in the circuit decree, Lord Eldon said: “ The circumstance that the assignment is made, not as a pledge for money about to be borrowed, but for an antecedent debt, seems to me extremely material. Lord Thurlow, in Scott vs. Tyler, seems to have conceived that much depended upon that circumstance ; observing that three years after the death of the testator, the bankers took these effects, which they must know had been the testator’s, from her, whom they also knew to be his executrix, not for money then advanced, but as a pledge for a debt contracted with them before, on her own accouut. Indeed, when the en-quiry is, whether the party taking the assets of the testator by means of such a pledge, is, or is not, guilty of fraud, it seems very material whether he is endeavoring to procure to himself payment of a debt already due, and which the executor has no means of paying with his own money, or is exercising a choice, whether *177 he will or will not lend his money upon the pledge then offered to him. Undoubtedly, suspicion of fraud must ahoays arise, where a party, having- a debt due to him by the executor, takes in satisfaction of that debt, the assets which he' knows belong to the executor only in that character. But where a man is applied to for a loan of money, there is no motive for fraud. He may keep his money if not satisfied with the security. He has no interest in advancing his money upon a doubtful security, and taking his chance of getting it back by means of rendering that security available.” This whole passage is pregnant with arguments against the transaction now under investigation. Can it be believed that Mr. Gatewood would have advanced money for these premises ? or that he would have accepted them either as a security or as a satisfaction ,of- his demands if his debtor had possessed other property sufficient to have indemnified him 1 He was driven by the necessities of his position to suffer loss or to indemnify himself at the expense of others, and, fully aware of the injury he was inflicting on them, he accepted mortgages and a conveyance from one who took a title for the mere purpose of transferring it to him. He therefore in justice and in equity occupies the position of Phillip J. Messervey under whom he holds and must be subject to the same risks and conditions. Indeed Phillip may be substantially regarded as his agent to procure the title for him from the master, and the principal, by well recognized principles of law, is chargeable with the acts of him whom he employs.
We turn now to the remaining ground of appeal, relating to the premises purchased by the plaintiff under executions against Mrs. Messervey.
It is alleged that this purchase was made at a sacrifice, under an agreement on the part of the plaintiff that the family should have'the benefit of it. The evidence rests in parol. It is argued that the family, trusting to the agreement, peimittedthe plaintiff to purchase at a sacrifice; that to allow him to retain the property under such circumstances would encourage fraud, and that, upon this distinct ground, independently of the statute of frauds, a trust should be decreed. Undoubtedly there are cases (such as McDonald vs. May, 1 Rich. Eq. 91) where a party, who enables himself to purchase at an under- rate by representing that he is buying for another, is liable to have his purchase set aside for fraud. These are cases where competition is fraudulently re *178 duced or destroyed. In such cases, it matters not whether there was an agreement or not.
Indeed, in the latter case, where of course the representation is wholly false, that circumstance serves only to enhance the fraud complained of. Such cases as these steer entirely clear of the statute of frauds. The evidence of the purchaser’s representations is received not for the purpose of substantiating the supposed agreement, but for the purpose of shewing the means by which he effected his fraudulent design, and when received it is employed not for the purpose of enforcing the contract but for that of setting it aside.
But no such circumstances have been developed in this case. The fraud insisted on consists merely in the non-fulfilment of the alleged agreement, and depends, of course, entirely upon the question whether there was in fact an agreement to be performed, and that preliminary fact the statute will not allow to be established by parol.
But these premises were purchased by Mrs. Messervey at the partition sale, and were subject in her hands to the statutory mortgage in such cases. That lien still attaches upon the property in the hands of the plaintiff; who purchased her property, and must take it subject to the incumbrances upon it at the time he bought. Upon this ground we think it liable to the extent of the interests of Sophia and Elizabeth in whatever balance of Mrs. Messervey’s purchase may remain unpaid.
It has been insisted that the interests of the whole family in this balance should be credited upon the plaintiff’s demand against Sophia and Elizabeth. . But very clearly Mrs. Messervey, being by her purchase both debtor and creditor to the extent of her own share, that must be considered as paid, and the plaintiff holds the property discharged from it. Then as to the shares of the children ; but three of them are parties to this suit. It would be improper to apply the shares of the absentees for the benefit of the parties before us ; especially when it is clear that upon no principle can such an application be sustained. But it does appear to us that the share of Phillip J. Messervey, by whom the sisters and Gatewood have suffered, should be taken into account; in order to save to these defendants (the sisters in the first instance) as much as possible of the wreck which he has left ; and it is ordered accordingly.
If after taking the account, it shall be necessary to sell the premises bought by the plaintiff under execution, by way of enforcing *179 the lien of the defendants, Sophia and Elizabeth, an order to that effect may be moved for.
In all respects except as modified by this opinion the decree is affirmed and the appeal dismissed.
Johnson, Ch. concurred.
Dunkin, Ch., I concur in the result.